# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JANE DOE,                                     )
                                              )
              Plaintiff,                      )
                                              )
v.                                            )
                                              )
UBER TECHNOLOGIES, INC.                       )
1445 Market Street                            )
4th floor                          )
San Francisco, CA, 94103                      )
                                              )
  Serve: CT Corporation System               )
         1015 15th Street NW       )
         Washington, DC, 20005               )
and                                           )
                                              )
RASIER, LLC                                   )
1445 Market Street                            )
4th floor                          )
San Francisco, CA, 94103                      )
                                              )
  Serve: CT Corporation System               )
         1015 15th Street NW       )
         Washington, DC, 20005               )
and                                           )
                                              )
RASIER-DC, LLC                                )
1445 Market Street                            )
4th floor                          )
San Francisco, CA, 94103                      )
                                              )
  Serve: CT Corporation System               )
         1015 15th Street NW       )
         Washington, DC, 20005               )
and                                           )
                                              )
RAUL E. RODRIGUEZ VASQUEZ                     )
8530 Riggs Road                               )
Hyattsville, MD 20783                         )
                                              )
      SERVE:     Raul Rodriguez Vasquez       )

Case: 1:19-cv-00903   JURY DEMAND
Assigned To : Mehta, Amit P.
Assign. Date : 3/29/2019
Description: Personal Injury   (B-DECK)

8530 Riggs Road    )
Hyattsville, MD 20783  )
           )
Defendants.      )
_____ )

# COMPLAINT

## PARTIES

1.  Plaintiff Jane Doe is an adult female resident of the District of Columbia.

2.  Defendant Uber Technologies, Inc. is a corporation incorporated under the laws of Delaware, with its principal place of business in San Francisco, California. At all times relevant herein Uber was authorized to conduct business and was conducting business in the District of Columbia.

3.  Defendant Rasier, LLC is a wholly-owned subsidiary of Uber. At all times relevant herein Rasier, LLC was authorized to conduct business and was conducting business in the District of Columbia.

4.  Defendant Rasier-DC, LLC is a wholly-owned subsidiary of Uber. At all times relevant herein Rasier-DC, LLC was authorized to conduct business and was conducting business in the District of Columbia.

5.  Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-DC, LLC are collectively referred to as "Uber."

6.  Defendant Raul E. Rodriguez Vasquez ("Defendant Rodriguez Vasquez") is an adult male resident of the State of Maryland, who at all times relevant herein, was conducting business on behalf of Defendant Uber in the District of Columbia.

**FACTUAL BACKGROUND – THE SEXUAL HARASSMENT AND ASSAULT OF THE PLAINTIFF BY UBER DRIVER RAUL E. RODRIGUEZ VASQUEZ**

7.      On April 1, 2018, shortly after 12:00 AM, Plaintiff Jane Doe, requested an Uber ride to a restaurant/bar located at 436 11th Street NW by using her Uber account through her cell phone application, or "app." Plaintiff had been at the restaurant/bar eating chicken wings, and drinking beer with a friend.

8.      When Plaintiff called her Uber at approximately midnight, she did not request a particular driver. Instead, Uber randomly assigned her a driver through its app.

9.      Shortly after Plaintiff requested her Uber ride through the Uber app, her ride was accepted by Uber driver Raul E. Rodriguez Vasquez. Defendant Rodriguez Vasquez picked Plaintiff up from 1101 E Street NW and was supposed to bring Plaintiff to her apartment in the District of Columbia. Instead, Defendant Rodriguez Vasquez repeatedly sexually harassed Plaintiff during her ride, asking her inappropriate questions such as would she consider having an affair with him, would she invite him up to get a drink, and would she enjoy having sexual relations with a younger man like himself.  He then drove her to a secluded side street, where he parked his car and sexually assaulted Plaintiff; locking her in his vehicle, forcing her to watch him masturbate, groping her inappropriately, and then forcing her to perform oral sex on him.

10.     The assaults and false imprisonment occurred on Kennedy Street NW between 14th and 16th Street NW in the District of Columbia, in Defendant Rodriguez Vasquez's vehicle, during the Uber ride that Plaintiff had requested through her Uber cell phone app.

11.     Following this incident, Plaintiff became emotionally and physically distraught. She sought medical treatment, including testing for sexually transmitted diseases, and mental health treatment. She described the crime to a social worker at the clinic where she sought treatment about the assault. The social worker contacted the police and Detective Jordan Katz

arrived at the clinic and interviewed Plaintiff. She provided the identity, contact information, the Uber trip receipt, which included a picture of Defendant Rodriguez Vasquez, and an account of what had occurred to the detective. Detective Katz thereafter went with Plaintiff to the area where the assault occurred. He also contacted Uber and obtained the biographical information of the Uber driver as well as the GPS data from the Uber trip, which corroborated Plaintiff's account of what had occurred. He also obtained DNA samples from the sweatshirt that Plaintiff was wearing on the night of the incident.

12.     Thereafter, Detective Katz met with Defendant Rodriguez Vasquez who provided a DNA sample. The sample provided by Defendant Rodriguez Vasquez matched that of the sample taken from Plaintiff's sweatshirt.

13.     On July 12, 2018, an arrest warrant was issued for Defendant Rodriguez Vasquez.

14.     On July 24, 2018, he was charged with two counts of sexual abuse.

15.     On September 18, 2018, Defendant Rodriguez Vasquez pled guilty to one count of sexual abuse for the acts that he perpetrated against Plaintiff on April 1, 2018.

16.     As a result of the actions of Defendant Rodriguez, Plaintiff has suffered severe psychological and emotional injuries, which have required medical treatment, including but not limited to, psychological counseling, testing for sexually-transmitted diseases, and medication.

17.     Plaintiff seeks recovery for the significant damages she has suffered as a result of Defendants' intentional and negligent conduct.

## FACTUAL ALLEGATIONS REGARDING DEFENDANT UBER

### *Uber's Transportation Model*

18.     Uber is a rapidly-expanding transportation company that is valued in the tens of billions of dollars. It allows customers to order and pay for taxi rides using a smart phone application, or app.

19.     The app is free to download on any smart phone. To request a ride, a customer enters a drop-off location in the Uber app. The app determines a customer's pick-up location using GPS. The app calculates a fare that varies based on a proprietary algorithm that depends on, upon information and belief, pick-up and drop-off locations, time of day, area traffic, and availability of Uber drivers, among other factors. The customer can either accept the quoted fare or decline the ride. If the customer accepts the fare, the app contacts Uber drivers in the vicinity of the rider. The app matches the customer to the first available Uber driver to accept the ride.

20.     For its business model to work, Uber requires a massive pool of drivers. Uber solicits and hires millions of non-professional drivers through its website, app, and marketing campaigns. Uber states that "[a]nybody can drive for Uber."

21.     The application process to become an Uber driver happens entirely online through its website. Uber represents that signing up takes "less than 4 minutes." It is designed so that Uber can hire drivers en masse while incurring minimal costs. Applicants fill out online forms and upload copies of their driver's license, vehicle registration, proof of insurance, and a photograph. Upon information and belief, Uber does not verify that the applicant has uploaded his or her actual documents and photograph.

### *Uber's "Safety" Marketing*

22.     Uber markets itself as a safer alternative to other transportation companies. Uber has said that it provides the "safest ride on the road." It represents that its app was "built with safety in mind" and that "your safety is always a top priority."

23.     On its website, Uber states that it requires its drivers to undergo "several screenings" before allowing them to drive with Uber, and that they must remain in good standing with the law in order to continue to drive for Uber.

24.     Uber further represents that it continuously monitors its drivers through its rating system and annual criminal and motor vehicle background checks of its drivers, whether or not it is required to do so by law.

25.     Uber represents that in addition to the screening it performs, it periodically requires its drivers to take and upload self-portraits, or "selfies," to ensure that the Uber driver behind the wheel is the actual driver that Uber screened, rather than someone else.

26.     Uber also markets itself as a designated-driver service through a partnership with Mothers Against Drunk Driving (MADD) and its Hero Campaign, in which it offered $10 credits to customers who pledged not to drink and drive.

27.     Uber's campaign to represent itself as a designated-driver service is marketed heavily toward young women after a night of drinking. Its campaign photographs show smiling young women, presumably being transported by an Uber driver after a night out, who are meant to appear "safe."

28.     Through its partnership with MADD and its Hero Campaign, as well as other statements it has made on its website and through its app, Uber has systematically marketed itself as a "safe" alternative to drinking and driving, especially for women. As discussed in the

6

paragraphs *infra*, it has done so despite possessing actual knowledge that its female customers face the peculiar risk of sexual assault by its male drivers.

### Uber's Prior Knowledge of the Peculiar Risk Faced by Women Riding Alone in an Uber

29.     On April 30, 2018, CNN published the results of an investigation that it conducted of the number of sexual assaults reported against Uber or its drivers.[1] CNN determined that at least 103 complaints of sexual assaults or sexual misconduct had occurred that resulted in reports – meaning that the drivers were arrested, were wanted by police, or were named in civil lawsuits alleging sexual assault. CNN further indicated that its investigation revealed that the number of complaints of sexual assaults or sexual misconduct was likely probably much higher than what had been reported.

30.     Many of the women who were either raped or assaulted were either intoxicated or had been drinking prior to requesting an Uber.

31.     By the time that the Plaintiff was assaulted, Uber was aware that women, particularly women who were utilizing Uber as a designated driver service to take them home after they had consumed alcohol, faced a peculiar risk of suffering either sexual assault or another form of sexual misconduct at the hands of their male Uber drivers.

### Uber's Right to Control and Control of its Drivers

32.     Uber claims it is a technology company that merely provides software to users. It relies in part on this self-serving allegation in attempting to classify its drivers as "independent contractors," and vigorously opposes any attempt to classify them as employees, in an effort to

---

[1] A link to CNN's article regarding its investigation can be found here: https://web.archive.org/web/20190327154812/https://money.cnn.com/2018/04/30/technology/uber-driver-sexual-assault/index.html.

evade the responsibilities towards its drivers and customers that an employment or agency relationship would entail.

33.     Treating its hired drivers as independent contractors is vital to Uber's business model and success as a company. In doing so, Uber avoids paying for employee benefits, Social Security and Medicaid taxes, unemployment insurance, and workers compensation, among other costs, which other transportation companies must pay. In 2015, Fortune estimated that reclassifying Uber's drivers as employees would cost the company $4.1 billion.[2] In the article, Uber's business model is referred to as "one part technology company and one part labor law workaround."

34.     In reality, Uber is a transportation company that sells rides to customers, ~~albeit~~ through an online platform. The Uber app is free to download for customers. Uber's sole source of revenue is fares paid by its customers for rides, and Uber hires drivers to provide that service. Accordingly, Uber advertises itself as "your private driver," and not as a software application.

35.     Like any company, Uber must provide quality services in order to retain old customers and obtain new ones. To provide quality transportation services and keep its revenue high, Uber controls almost all aspects of a customer's Uber ride. Uber drivers, including Defendant  have little, if any, control over their provision of Uber's transportation services. For example:

    a.     Uber controls hiring and firing of Uber drivers. Uber exclusively decides who may drive with the app. If Uber fires a driver, it may re-hire the driver in its own discretion after the driver attends a required quality improvement course.

---

[2] A link to Fortune's analysis can be found here:
https://web.archive.org/web/20190327154716/http://fortune.com/2015/09/17/ubernomics/

b.      Uber controls the fare that customers are charged. Uber drivers have no discretion, and are not able, to adjust the fare. Uber also dictates whether additional fees or surcharges will be added to a fare. This includes "surge" pricing, so-called because it applies when there is a "surge" in customer requests for rides. Until recently, Uber prohibited its drivers from accepting tips from customers. While it currently allows tipping, it advises customers on its website that tipping is "optional." Even if customers desire to tip their Uber drivers, they are requested to do so through the app so that Uber can track the tips.

c.      Uber controls whom drivers may accept as customers. Uber drivers have no discretion to pick-up any fares that are not assigned to them through the Uber app. Uber drivers are also not permitted to pick up fares from other transportation companies while they are on the Uber app. Finally, Uber drivers are not permitted to have friends or family in the vehicle with them unless they are Uber customers.

d.      Uber controls all payments for an Uber ride fare. Uber drivers are prohibited from collecting fares themselves, unless specifically authorized by Uber. Once the app is downloaded, customers must enter payment information, such as a credit card or checking account. Once a ride is complete, Uber uses the customer's payment information to collect the fare and any tip through the app.

e.      Uber controls payments to its drivers. Uber pays its drivers a percentage of each fare, and since Uber drivers cannot control their fares, they also have no discretion to control or adjust their compensation rate. Uber also controls when drivers are paid. Drivers are prohibited from accepting fares directly from customers.

f.      Uber controls the timeframe within which a driver must decide to accept a ride request. If the driver does not decide within the allotted seconds, Uber will not permit the driver to accept the ride.

g.      Uber controls how long a driver must wait for a customer before considering the customer a no-show. Drivers have no discretion to leave a designated pick-up location to accept rides from other waiting customers until permitted by Uber, otherwise they will not receive a cancellation fee.

h.      Uber controls all disputes between customers and its drivers. Drivers must contact Uber through its website or app to settle any disagreements with customers. Similarly, disagreements over star ratings, wait times, pick-up and drop-off locations, etc. must be mediated by Uber.

i.      Uber controls what drivers are permitted to say to customers. For example, Uber drivers are prohibited from commenting on a customer's appearance.

j.      Uber controls items that drivers are required to or prohibited from having in their vehicle. For example, Uber drivers are required to have a phone mount. Uber drivers are also prohibited from carrying firearms of any kind, even if otherwise permitted by law.

k.      Uber controls the type of vehicle a driver may use. Drivers do not have discretion to drive a vehicle that does not have four doors, has less than four passenger seats, has cosmetic damage, or has commercial branding.

l.      Uber requires drivers to abide by several other rules and requirements in order to drive for Uber. If Uber drivers do not follow Uber's rules, they are fired and prohibited from driving with app. These rules include:

      i.      Drivers are required to maintain their vehicles in a mechanical condition that is acceptable to Uber;

      ii.      Driver must maintain their cars in clean condition that is acceptable to Uber;

      iii.      Drivers must retain a ride request acceptance rate that is acceptable to Uber;

      iv.      Drivers must maintain a minimum average star rating that is set by Uber;

      v.      Drivers must respond to ride requests in a timeframe that is set by Uber;

      vi.      Drivers must remain below a maximum cancellation rate that is set by Uber; and

      vii.      Drivers must display an Uber logo on their vehicles at all times while driving for Uber.

36.    Uber maintains the right to remove a driver's access to its app if it determines the driver is not qualified to drive for it, or if it determines that a driver has violated its Community Guidelines.[3]

37.    Uber maintains the right to remove a driver's access to its app if it determines that the driver has exceeded the maximum cancellation rate, or declined to accept too many trips.

38.    Uber can require drivers to attend quality improvement courses in order to regain access to its app following a suspension by Uber under certain circumstances. These courses are

[3] Uber's community guidelines can be found here: https://www.uber.com/legal/community-guidelines/us-en.

taught by third-party experts and are scheduled and/or offered by Uber to its drivers through its website.

39.     Uber explicitly prohibits any form of sexual conduct or contact between its drivers and its customers, and reserves the right to suspend a driver's account immediately for a complaint of violence, sexual misconduct, harassment, discrimination, or illegal activity while driving for Uber.

## JURISDICTION

40.     Venue in this District is proper pursuant to 28 U.S.C. § 1391, as all of the relevant facts giving rise to this case and damages sustained by Plaintiff occurred in this District.

41.     This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 (2016) (diversity), as the Plaintiff resides in Washington, D.C., Defendant Rodriguez Vasquez resides in Maryland, and the Defendant Uber is a Delaware corporation with its principal place of business in California, and the amount in controversy exceeds $75,000.00.

## COUNT I
### Assault and Battery
### (*Defendant Rodriguez Vasquez*)

42.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

43.     Plaintiff further alleges that Defendant Rodriguez Vasquez intentionally inflicted physical and emotional harm on the Plaintiff in the form of multiple sexual assaults, including verbally harassing her, touching her without her consent, exposing his penis to her without her consent, and forcing her to perform oral sex without her consent.

44.     Plaintiff alleges that as a direct and proximate result of the actions perpetrated against her by Defendant Rodriguez Vasquez, she sustained severe and permanent personal

injuries of both a physical and psychological nature that have resulted in incurred and future

medical expenses, severe emotional distress, both past and future, lost earnings, and irreparable

harm to her personal dignity.

45.     Plaintiff seeks fair and just compensation for the damages outlined above,

punitive damages for the intentional actions of Defendant Rodriguez Vasquez, and all other relief

that Court deems just and proper, and which she may be entitled to by law for Defendant

Rodriguez Vasquez's assault and battery against her.

**COUNT II**
**Intentional Infliction of Emotional Distress**
***(Defendant Rodriguez Vasquez)***

46.     Plaintiff incorporates all preceding paragraphs into this Count by reference as

though fully stated herein.

47.     At all relevant times herein, Plaintiff as a customer of Uber and was in Defendant

Rodriguez Vasquez's vehicle as a customer for Uber.  As such, Uber as well as Defendant

Rodriguez Vasquez had a duty to protect Plaintiff from sexual harassment, and sexual assault.

48.     Instead of protecting Plaintiff, Defendant Rodriguez Vasquez himself

intentionally committed several acts of sexual harassment, sexual assault, and battery against

Plaintiff while she was an Uber customer, in his vehicle, during an Uber ride.

49.     Defendant Rodriguez Vasquez committed sexual harassment and sexual assault

against the Plaintiff with the intent of harming her, either physically or emotionally.

50.     Defendant Rodriguez Vasquez's conduct towards Plaintiff was extreme and

outrageous, and was likely to cause her either bodily harm, or severe emotional distress.

51.     Plaintiff alleges that as a direct and proximate result of the actions perpetrated

against her by Uber's employee and agent, Defendant Rodriguez Vasquez, she sustained severe

and permanent personal injuries of both a physical and psychological nature that have resulted in incurred and future medical expenses, severe emotional distress, both past and future, lost earnings, and irreparable harm to her personal dignity.

52.     Plaintiff seeks fair and just compensation for the damages outlined above, punitive damages for the intentional actions of Defendant Rodriguez Vasquez, and all other relief that Court deems just and proper, and which she may be entitled to by law for Defendant Rodriguez Vasquez's assault and battery against her.

**COUNT III**
**Negligence – Respondeat Superior**
***(Defendant Uber)***

53.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

54.     Plaintiff alleges that at all times relevant herein, Defendant Rodriguez Vasquez was acting within the course and scope of his employment and/or agency with Defendant Uber.

55.     Plaintiff further alleges Defendant Uber is legally liable for all acts committed by Defendant Rodriguez Vasquez since they were committed within the course and scope of his employment with Defendant Uber.

56.     Plaintiff alleges that as a direct and proximate result of the actions perpetrated against her by Uber's employee and agent, Defendant Rodriguez Vasquez, she sustained severe and permanent personal injuries of both a physical and psychological nature that have resulted in incurred and future medical expenses, severe emotional distress, both past and future, lost earnings, and irreparable harm to her personal dignity.

57.     Plaintiff seeks fair and just compensation for the damages outlined above and all other relief that Court deems just and proper, against Uber for the negligent and intentional

conduct of its employee and/or agent, Defendant Rodriguez Vasquez under the doctrine of respondeat superior, and all other relief that Court deems just and proper, and which she may be entitled to by law.

## COUNT IV
### Negligence - Apparent Agency
### (*Defendant Uber*)

58.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

59.     Plaintiff alleges that through Uber's dissemination of information online, through social media, including its app, website, and Facebook, advertisements, its Hero Campaign, its Community Guidelines, and its partnership with MADD, and through other means further investigation and discovery may reveal, Defendant Uber has represented to its ridership, including Plaintiff, that its drivers are employees and/or agents of Uber, that it maintains control and oversight over its drivers and their actions, that it monitors its driver's activities on an ongoing basis, and that carefully screens its drivers before hiring them and on an annual basis.

60.     Plaintiff reasonably relied upon these representations by Defendant Uber when she requested a ride through Uber's app on her phone on April 1, 2018, and when she got in the vehicle with Defendant Rodriguez Vasquez that night.

61.     As a direct and proximate result of this reliance by Plaintiff on Defendant Uber's representations of its employment and/or agency of its drivers, Plaintiff sustained severe and permanent personal injuries of both a physical and psychological nature that have resulted in incurred and future medical expenses, severe emotional distress, both past and future, lost earnings, and irreparable harm to her personal dignity.

62.     Plaintiff seeks fair and just compensation for the damages outlined above, and all other relief that Court deems just and proper, against Uber for the negligent and intentional conduct of its employee and/or agent, Defendant Rodriguez Vasquez under the doctrine of apparent agency, as well as all other relief that Court deems just and proper, and which she may be entitled to by law.

### COUNT V
### D.C. Code §28-3905(k) – Consumer Protection
### *(Defendant Uber)*

63.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein

64.     Plaintiff alleges that through Uber's dissemination of information online, through social media, advertisements, its Hero Campaign, its Community Guidelines, and its partnership with MADD, Defendant Uber represents to its consumers, including Plaintiff, that its drivers are employees and/or agents of Uber, that it maintains control and oversight over its drivers and their actions, that it monitors its driver's activities on an ongoing basis, and that carefully screens its drivers before hiring them and on an annual basis.

65.     Plaintiff further alleges that through the dissemination of these advertising tools, Defendant Uber represented to its consumers, including Plaintiff, that its passengers would be safely transported by Uber drivers,  that it was a reasonably safe form of transportation, and that it was specifically a safe alternative to drinking and driving.

66.     Plaintiff further alleges that Defendant Uber knowingly made these representations to its consumers, including Plaintiff, despite having actual knowledge that its drivers posed a peculiar risk to women, and in particular to women who had been consuming alcohol or who were intoxicated.

67.    Plaintiff alleges that Defendant Uber did not take reasonable steps to investigate this peculiar risk, did not take reasonable steps to make its consumers, including Plaintiff, aware of this risk, and continued its advertising campaign as a safe alternative to drinking and driving despite having actual that its drivers posed a peculiar risk to women, and in particular to women who had been consuming alcohol or who were intoxicated.

68.    Plaintiff further alleges that Defendant Uber violated the CPPA, including section 29-3904 (a), (d), and (e).

69.    Plaintiff alleges that as a direct and proximate result of the above-referenced advertising campaigns waged by Uber, she sustained severe and permanent personal injuries of both a physical and psychological nature that have resulted in incurred and future medical expenses, severe emotional distress, both past and future, lost earnings, and irreparable harm to her personal dignity.

70.    Plaintiff seeks fair and just compensation for the damages outlined above from Defendant Uber under the CPPA, and all other relief that Court deems just and proper, and which she may be entitled to by law, including but not limited to, attorneys' fees, costs, or liquidated damages. for Defendant Rodriguez Vasquez's assault and battery against her.

## COUNT VI
### Negligence – Inherently Dangerous Activity/Peculiar Risk
### (*Defendant Uber*)

71.    Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

72.    Plaintiff alleges that she accepted the ride from Defendant Rodriguez Vasquez because she reasonably believed based on representations made by Uber that he was acting on behalf of Defendant Uber, as its agent or employee, and as such that the ride was safe.

73.     Plaintiff further alleges that Defendant Uber owed her a duty as one of its customers/riders to provide her with a reasonably safe mode of transportation, including but not limited to a duty to warn Plaintiff of the peculiar risk posed to her, as a woman riding alone in an Uber, by its drivers, including Defendant Rodriguez Vasquez.

74.     Plaintiff further alleges that Defendant Uber had actual knowledge that the provision of rides by male drivers to women, especially to women who were alone, and were intoxicated or who had been drinking, was inherently dangerous and posed a peculiar risk to women such as Plaintiff given the high number of reported sexual assaults in this context.

75.     Given its actual and/or constructive knowledge of this risk, Defendant Uber is subject to liability under the inherently dangerous and peculiar risk doctrines for the harm that Defendant Rodriguez Vasquez caused to Plaintiff while performing his function as an Uber driver.

76.     Plaintiff alleges that as a direct and proximate result of the above-referenced conduct by Defendant Uber, she sustained severe and permanent personal injuries of both a physical and psychological nature that have resulted in incurred and future medical expenses, severe emotional distress, both past and future, lost earnings, and irreparable harm to her personal dignity.

77.     Plaintiff seeks fair and just compensation for the damages outlined above from Defendant Uber, and all other relief that Court deems just and proper, and which she may be entitled to by law for Defendant Rodriguez Vasquez's assault and battery against her.

## COUNT VII
### Negligence – Failure to Warn
#### (*Against All Defendants*)

78.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

79.     Plaintiff alleges that she accepted the ride from Defendant Rodriguez Vasquez because she reasonably believed based on representations made by Uber that he was acting on behalf of Defendant Uber, as its agent or employee, and as such that the ride was safe.

80.     Plaintiff further alleges that Defendant Uber owed her a duty as one of its customers/riders, and as a common carrier, to provide her with a reasonably safe mode of transportation, including but not limited to a duty to warn Plaintiff of the peculiar risk posed to her, as a woman riding alone in an Uber, by its drivers, including Defendant Rodriguez Vasquez.

81.     Plaintiff further alleges that Defendant Uber had actual knowledge that the provision of rides by male drivers to women, especially to women who were intoxicated or who had been drinking, was inherently dangerous and posed a peculiar risk to women such as Plaintiff given the high number of reported sexual assaults in this context.

82.     Given its actual and/or constructive knowledge of this risk, Defendant Uber breached its duties to Plaintiff by failing to warn her of the risk that its services posed to women, and in particular to women who had been consuming alcohol or who were intoxicated.

83.     As a direct and proximate result of the negligence of Defendant Uber, Plaintiff sustained severe and permanent personal injuries of both a physical and psychological nature that have resulted in incurred and future medical expenses, severe emotional distress, both past and future, lost earnings, and irreparable harm to her personal dignity.

84.     Plaintiff seeks fair and just compensation for the damages outlined above from Defendant Uber, and all other relief that Court deems just and proper, and which she may be entitled to by law.

## PRAYER FOR RELIEF

Plaintiff prays the Court for judgment against Defendants Rodriguez Vasquez and Uber, jointly and severally, for an amount of no less than $10,000,000.00, for compensatory and punitive damages, together with costs of this lawsuit, legal interest, reasonable attorney's fees and such other relief as the Court may deem just and proper under the circumstances

### JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

KOONZ, MCKENNEY, JOHNSON
DEPAOLIS & LIGHTFOOT, L.L.P.

Kasey K. Murray, Federal Bar ID # 1016186 U.S.C.
2001 Pennsylvania Avenue N.W., Suite 450
Washington, D.C. 20006
T: (202) 659-5500
F: (202) 785-3719
Email: KMurray@Koonz.com
*Counsel for Plaintiff Jane Doe*